UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARCO AMPUERO : | |
|     Plaintiff : | |
| : | JURY TRIAL DEMANDED |
| v. : | C.A. No. |
| : | |
| ARBOUR FOUNDATION, INC. : | |
|     Defendant : | |

## **COMPLAINT**

**I.    JURISDICTION AND VENUE**

1. Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction), in that his claims arise from both Federal and Massachusetts law.

2. At all times pertinent to this Complaint, Plaintiff was continually employed by Defendant Arbour Foundation at its South Attleboro, Massachusetts facility, known as the Arbour-Fuller Hospital or Fuller Hospital.

**II.    PARTIES**

3. Plaintiff is a citizen of the State of Rhode Island.

4. Defendant Arbour Foundation, Inc. ("Arbour") is a corporation formed under the laws of the Commonwealth of Massachusetts, with a principal place of business in the State of Pennsylvania.

**III.    FACTS COMMON TO ALL COUNTS**

5. Plaintiff began his employment with Defendant Arbour in 2014 as a Residential Assistant.

6. Throughout his employment, the Plaintiff performed his duties in a satisfactory, if not exemplary fashion.

7. As of November 2020, Plaintiff was assigned to what was known as "Program Plus," the partial hospitalization program.

3

8. Patients in Program Plus would participate in treatment activities during the day, while living in the Hospital's living facilities at night.

9. Plaintiff was responsible for supervising and caring for the patients in the living facilities that were part of Program Plus.

10. On or about November 14, 2020, on his day off, Plaintiff began to experience symptoms of COVID-19.

11. Plaintiff texted Defendant's scheduler, Jessica, and advised that he was experiencing symptoms of COVID-19.

12. Jessica instructed Plaintiff to stay home and get tested for COVID-19.

13. Plaintiff diligently searched for COVID-19 testing, but was unable to get an appointment until November 18, 2020.

14. When Plaintiff went to the testing appointment on November 18, 2020, he was told that he was subject to a quarantine order, and also had to isolate from the remainder of his household.

15. Plaintiff advised Jessica that he had received the test.

16. On November 21, 2020, Plaintiff relayed to Jessica that he had tested positive the day before.

17. On the same day, Plaintiff's wife began to experience COVID-19 symptoms.

18. Plaintiff's wife tested positive for COVID-19.

19. The Rhode Island Department of Health advised Plaintiff that he must remain in quarantine until at least 10 days after the last person tested positive.

20. Plaintiff relayed this information to Jessica by telephone around November 25, 2020.

21. Jessica passed the phone to Human Resources Director Christopher Kirk.

22. Plaintiff spoke to Kirk and informed him of the quarantine requirements, and offered to

provide documentation.

23. Kirk said that Plaintiff could provide the documentation when they met.

24. On or about November 30, 2020, Plaintiff's son began exhibiting symptoms of COVID-19.

25. On or about December 1, 2020, Plaintiff relayed to Kirk that his son was exhibiting symptoms of COVID-19.

26. Plaintiff's wife exhibited serious, debilitating symptoms that included weakness, debilitation, vomiting, headaches, and trouble breathing, for which she consulted with a physician.

27. Because Plaintiff's wife was isolated, she required care from the Plaintiff.

28. Plaintiff's son experienced similar symptoms, and required care from the Plaintiff.

29. Kirk told Plaintiff that if he did not report to work, he could be terminated.

30. Plaintiff tried to explain that he was still required to quarantine because of his wife's positive test.

31. On December 4, 2020, Kirk called Plaintiff and told him that he was fired for "past transgressions," and also mentioned that Plaintiff had been needed at work.

32. By letter dated December 4, 2020, Plaintiff was terminated from his employment.

33. The stated reason for the termination was pretextual.

## IV.    CAUSES OF ACTION

**COUNT I –
FAMILY MEDICAL LEAVE ACT, 29 U.S.C. § 2601 *ET SEQ.***

34. Plaintiff realleges those allegations contained in the Paragraphs above as if fully restated therein.

35. Plaintiff was an "eligible employee" as that term is defined under 29 U.S.C. § 2611(2).

36. Defendant was an employer as that term is defined under 29 U.S.C. § 2611(2).

37. Plaintiff requested leave for own "serious health condition" as defined under 29 U.S.C. § 2611(11), or that of his wife and son as defined under and 29 U.S.C. § 2611(12).

38. Defendant interfered with and/or retaliated against Plaintiff with respect to that leave by terminating him.

39. Defendant's actions in terminating him constituted an interference with the Plaintiff's rights to leave and/or retaliation for the Plaintiff's having exercised him rights to said leave, in violation of 29 U.S.C. § 2615.

40. The conduct of Defendant was undertaken with a reckless and/or callous indifference to the statutorily protected rights of the Plaintiff, and has unlawfully deprived the Plaintiff of his employment, income, benefits, privileges, promotions, and other benefits accruing to the employment relationship, as well as caused harm to his reputation, humiliation, and physical and emotional injury.

41. The actions of Defendant were willful, malicious, wicked, and wanton and for the good of society must be punished.

### COUNT II – MASSACHUSETTS HEALTH CARE WORKER WHISTLEBLOWER STATUTE (M.G.L. c. 149, sec. 187)

42. Plaintiff realleges those allegations contained in the Paragraphs above as if fully restated therein.

43. Defendant is a "health care facility" as that term is defined under M.G.L. c. 149, sec. 187(a).

44. Plaintiff was a "health care provider" as that term is defined under M.G.L. c. 149, sec. 187(a).

45. Plaintiff complied with applicable quarantine/isolation orders issued by duly authorized state authorities in response to the COVID-19 pandemic.

46. By complying with said quarantine/isolation orders, Plaintiff refused to participate in what he reasonably believed to be a violation of law.

47. By complying with said quarantine/isolation orders, Plaintiff refused to violate professional standards of practice which he reasonably believed to pose a risk to public health.

48. Defendant's actions in terminating Plaintiff were in retaliation for his refusal to violate law and/or professional standards of practice.

49. The conduct of Defendant was undertaken with a reckless and/or callous indifference to the statutorily protected rights of the Plaintiff, and has unlawfully deprived the Plaintiff of his employment, income, benefits, privileges, promotions, and other benefits accruing to the employment relationship, as well as caused harm to his reputation, humiliation, and physical and emotional injury.

50. The actions of Defendant were willful, malicious, wicked, and wanton and for the good of society must be punished.

## COUNT III --
## M.G.L. 149 ch. § 148C
## (EARNED SICK LEAVE)

51. Plaintiff re-alleges all averments contained in the paragraphs above as if fully restated herein.

52. Defendant was an "employer" as that term is defined under M.G.L. ch. 149 § 148C.

53. Under Massachusetts law, employees automatically accrue one hour of paid leave time for every thirty hours worked, referred to as "Earned Sick Leave."

54. Once an employee has worked ninety days for an employer, the employee may utilize

Earned Sick Leave to care for his or her own illness, provided that the employee makes a good-faith effort to provide the employer with advance notice of the need to utilize Earned Sick Leave when the need is foreseeable.

55. Massachusetts law prohibits employers from interfering with, restraining, or denying the exercise or attempt to exercise the right to Earned Sick leave.

56. In November, 2020, Plaintiff had worked for Defendant for a sufficient period of time to become eligible for Earned Sick Leave, and had earned said Earned Sick Leave.

57. On November – December, 2020, Plaintiff attempted to exercise his right to Earned Sick Leave in order to attend to his own medical condition and/or that of his wife and son.

58. Defendants retaliated against Plaintiff for exercising his right to Earned Sick Leave by terminating him.

59. As a direct and proximate result of the wrongful actions of Defendant, Plaintiff suffered financial and reputational harm, as well as emotional distress, personal inconvenience, worry, loss of enjoyment of life, and other non-pecuniary losses.

60. The actions of the Defendant were taken in willful, wanton, and reckless disregard of the law, and were specifically calculated to injure the Plaintiff, and thus warrant an award of punitive damages.

### COUNT IV –
### (BREACH OF CONTRACT)

61. Plaintiff re-alleges all averments contained in the paragraphs above as if fully restated herein.

62. Plaintiff's employment contract with Defendant contained an implied covenant of good faith and fair dealing.

63. Defendant has violated said implied covenant of good faith and fair dealing by

terminating Plaintiff in retaliation for having attempted to exercise his statutory rights,

64. As a result of the breach of the contract, Plaintiff has suffered and will continue to suffer monetary damages.

65. The actions of the Defendants were taken in willful, wanton, and reckless disregard of the law, and were specifically calculated to injure the Plaintiff, and thus warrant an award of punitive damages.

## V.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court award:

1. His back wages;

2. Front pay

3. Reinstatement

4. Liquidated damages;

5. Punitive damages

6. Interest;

7. Attorney's fees and costs;

8. Compensatory and punitive damages; and

9. Any other relief this Court may deem appropriate.

                                       Respectfully submitted,
                                       Marco Ampuero
                                       By his attorney,

                                       /s/ Vicki J. Bejma
                                       Vicki J. Bejma BBO#653699
                                       Robinson & Clapham
                                       123 Dyer Street, Suite 135
                                       Providence, RI  02903
                                       (401) 331-6565
                                       (fax) 331-7888

vbejma@smrobinsonlaw.com

10